**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TOMMY HILFIGER LICENSING LLC, | |
| Plaintiff, | Case No. 19-cv-06910 |
| v. | |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

**COMPLAINT**

Plaintiff Tommy Hilfiger Licensing LLC ("Plaintiff" or "Tommy Hilfiger") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain

Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using infringing and counterfeit versions of Tommy Hilfiger's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using infringing and counterfeit versions of Tommy Hilfiger's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Tommy Hilfiger substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Tommy Hilfiger to combat Internet Store operators who trade upon Tommy Hilfiger's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Tommy Hilfiger's federally registered trademarks (collectively, "Counterfeit Tommy Hilfiger Products"). Defendants create the Defendant Internet Stores by the dozens and design them to appear to be selling genuine Tommy Hilfiger products, while actually selling Counterfeit Tommy Hilfiger Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Tommy Hilfiger Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and

the full scope and interworking of their counterfeiting operation. Tommy Hilfiger is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Tommy Hilfiger Products over the Internet. Tommy Hilfiger has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

4.    Tommy Hilfiger, along with its affiliated company Tommy Hilfiger U.S.A., Inc., designs, sources, distributes, sells, and markets throughout the United States, including Illinois, quality apparel, accessories and other products, all of which prominently display its famous, internationally-recognized and federally-registered trademarks (collectively, the "Tommy Hilfiger Branded Products"). Tommy Hilfiger Branded Products have become enormously popular and even iconic, driven by Tommy Hilfiger's arduous quality standards and innovative design. Among the purchasing public, Tommy Hilfiger Branded Products are instantly recognizable as such.

5.    Tommy Hilfiger Branded Products have been continuously sold under the Tommy Hilfiger trademarks in the United States for many years. Tommy Hilfiger Branded Products are distributed and sold to consumers through department stores, retail stores and authorized e-commerce sites throughout the United States and in Illinois, including through the official e-commerce tommy.com website launched in 2004.

6.    Tommy Hilfiger incorporates a variety of distinctive marks in the design of its various Tommy Hilfiger Branded Products. As a result of this long-standing use, Tommy Hilfiger owns common law trademark rights in its trademarks. Tommy Hilfiger has also registered its trademarks with the United States Patent and Trademark Office. Tommy Hilfiger

Branded Products typically include at least one of the federally registered Tommy Hilfiger trademarks. Tommy Hilfiger uses its trademarks in connection with the marketing of its Tommy Hilfiger Branded Products, including the following marks, which are collectively referred to as the "Tommy Hilfiger Trademarks."

| Registration No. | Trademark | Goods and Services |
| --- | --- | --- |
| 1,398,612 | TOMMY HILFIGER | For: clothing for men and women: namely, shirts, pants, jackets, sweaters, shorts, belts, vests, sport jackets, coats, rain coats, parkas in class 025. |
| 1,738,410 | TOMMY HILFIGER | For: clothing for men, namely, shirts, sweaters, pants, sweatshirts, shorts, sport jackets, parkas, bathing suits, vests in class 025. For: retail clothing store services in class 042. |
| 1,833,391 | TOMMY HILFIGER | For: ties, socks, suspenders, hats, caps, suits and blazers in class 025. |
| 1,995,802 | TOMMY HILFIGER | For: deodorants and soaps for personal use in class 003. For: articles of leather and imitation leather, namely, wallets, credit card cases, billfolds, umbrellas and travelling bags in class 018. For: bathrobes, tuxedos, pajamas, underpants and undershirts in class 025. |
| 2,103,148 | TOMMY HILFIGER | For: eyewear, namely, eyeglasses, sunglasses and eyeglass frames and lenses and eyewear accessories, namely, cases and holders in class 009. |

| | | |
|---|---|---|
| 2,162,940 | TOMMY HILFIGER | For: jewelry made of precious and non-precious metals and stones, namely, cuff- links, and bracelets in class 014.<br><br>For: footwear, namely, shoes, boots, sneakers, sandals and slippers in class 025. |
| 2,485,457 | TOMMY HILFIGER | For: jewelry, namely, necklaces, and rings in class 014.<br><br>For: pillows in class 020. |
| 2,617,339 | TOMMY HILFIGER | For: watches in class 014. |
| 2,389,024 | TOMMY | For: clothing for men, women and children, namely, t-shirts, sweatshirts, sweaters, jackets, coats, jeans, and caps in class 025. |
| 2,475,142 | TOMMY | For: full line of apparel and headwear in class 025. |
| 2,772,857 | TOMMY | For: handbags in class 018. |
| 3,164,348 | HILFIGER | For: clothing, namely, shirts, t-shirts, sweatshirts, sweaters, shorts, sweatpants, blazers, pants, jeans, suits, vests, jackets, coats, parkas, ponchos, swimwear, swim trunks, rainwear, wind resistant jackets, underwear, belts, hats, caps, scarves, boxer shorts, shoes, boots, sneakers, sandals, and gloves in class 025. |
| 2,899,046 | HILFIGER DENIM | For: clothing, namely, shirts, t-shirts, sweatshirts, tank tops, sweaters, turtle-necks, shorts, sweatpants, blazers, pants, jeans, skirts, suits, overalls, dresses, vests, jackets, coats, parkas, ponchos, swimwear, bikinis, swim trunks, overcoats, belts, hats, wool hats, caps, scarves, and gloves in class 025. |

| | | |
|---|---|---|
| 2,563,735 | TH | For: Jewelry and watches in class 014. |
| 2,612,455 | TH | For: full line of apparel in class 025. |
| 2,697,281 | TH | For: Full line of handbags, backpacks, and cosmetic bags sold empty in class 018. |
| 3,084,022 | TH | For: Eyeglasses, sunglasses and frames for eyeglasses in class 009. |
| 1,460,988 | | For: clothing for men and women, namely, shirts, pants, jackets, sweaters, shorts, belts, vests, sport jackets, coats, rain coats, parkas in class 025. |
| 1,727,740 | | For: clothing for men namely, shirts, sweaters, sportcoats, pants, sweatshirts, shorts, sport jackets, raincoats, parkas, overcoats, bathing suits, vests, turtlenecks; clothing for boys, namely, shirts, sweaters, sportcoats, pants, sweatshirts, shorts, sport jackets, parkas, bathing suits, vests in class 025.<br><br>For: retail clothing store services in class 042. |
| 1,808,520 | | For: socks, ties, hats, caps and blazers in class 025. |
| 2,030,406 | | For: cologne, eau de toilette, shaving lotion, deodorant and soap for personal use in 003.<br><br>For: articles of leather and imitation leather, namely wallets, credit card cases, billfolds, umbrellas and travelling bags in class 018.<br><br>For: bathrobes, tuxedos, pajamas, underpants, undershirts and suspenders in class 025. |

| | | |
|---|---|---|
| 2,213,511 | | For: footwear, namely, shoes, boots, sneakers, sandals and slippers in class 025. |
| 2,063,504 | | For: eyewear, namely, eyeglasses, sunglasses and eyeglass frames and lenses and eyewear accessories, namely, cases and holders in class 009. |
| 4,745,262 | TOMMY ▬ HILFIGER | For: soaps; perfumery; colognes; toilet water; perfumes, fragrances for personal use; lotions for skin care; antiperspirants; deodorants for personal use in 003.<br><br>For: optical goods, namely, spectacles, spectacle glasses, sunglasses, eyeglass cases and sunglasses cases, carrying cases and holders for portable computers and mobile phones, magnetic coded cards, namely, gift cards in class 009.<br><br>For: jewelry, namely, bracelets, necklaces, rings, earrings, cufflinks, horological and chronometric instruments, namely, watches, wrist watches, straps for wrist watches in class 014.<br><br>For: all purpose sports bags and athletic bags; overnight bags; book bags; tote bags; travelling bags; backpacks; handbags; luggage; suitcases; purses; briefcases; travel bags; duffel bags and beach bags, school bags; garment bags for travel; overnight cases, clutch bags; travel kit bags sold empty; suitcases with wheels attached; billfolds; wallets, pocket wallets, change purses, coin purses, credit card cases of leather; leather credit card wallets; name card cases; cosmetic cases sold empty; leather cases for cosmetics sold empty; umbrellas in class 018. |

| | | For: fabrics and textile goods, namely, household linen, bed linen, bath linen, bed sheets, pillow shams, pillow cases, bed blankets, comforters, quilts, bedspreads, bed covers, duvet covers, duvets, dust ruffles, mattress covers, towels, bath towels, beach towels, face cloths, shower curtains, handkerchiefs in class 024.<br><br>For: clothing for men, women and children and infants, namely, shirts, golf shirts, t-shirts, polo shirts, knit tops, woven tops, sweatshirts, tank tops, sweaters, blouses, jerseys, turtlenecks, shorts, sweatpants, warm-up suits, blazers, sport coats, trousers, jeans, skirts, dresses, suits, overalls, jumpers, vests, jackets, coats, raincoats, parkas, ponchos, swimwear, bikinis, swim trunks, overcoats, rainwear, wind resistant jackets, sleepwear, pajamas, bathrobes, underwear, lingerie, boxer shorts, belts made of leather, ties; headgear, namely, hats, wool hats, caps, visors, headbands, ear muffs; scarves, shawls, cloth bibs; footwear, gym shoes, sneakers, socks, hosiery, shoes, boots, beach shoes, sandals, slippers, gloves, suspenders; layettes in class 025.<br><br>For: retail department store services, online retail department store services, online retail outlet services featuring perfumery, cosmetics, clothing, footwear, headgear, textile goods, goods made of leather or imitation of leather, bags, eyewear, jewellery, watches and horological and chronometric instruments, household accessories, and home items in class 035. |
|---|---|---|

| | | |
|---|---|---|
| 3,264,718 | | For: clothing for men, women and children, namely, shirts, golf shirts, T-shirts, sweatshirts, tank tops, sweaters, jeans, vests, jackets, coats, parkas, underwear, scarves in class 025. |
| 3,264,715 | | For: handbags in class 018. |

7.     The above U.S. registrations for the Tommy Hilfiger Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Tommy Hilfiger Trademarks constitute *prima facie* evidence of their validity and of Tommy Hilfiger's exclusive right to use the Tommy Hilfiger Trademarks pursuant to 15 U.S.C. § 1057(b).  True and correct copies of the United States Registration Certificates for the above-listed Tommy Hilfiger Trademarks are attached hereto as **Exhibit 1**.

8.     The Tommy Hilfiger Trademarks are exclusive to Tommy Hilfiger and are displayed extensively on Tommy Hilfiger Branded Products and in Tommy Hilfiger's marketing and promotional materials.  Tommy Hilfiger Branded Products have long been among the most popular and recognizable of their kind, and have been extensively promoted and advertised at great expense.  In fact, Tommy Hilfiger has expended millions of dollars annually in advertising, promoting and marketing featuring the Tommy Hilfiger Trademarks.  Because of these and other factors, the Tommy Hilfiger Trademarks are famous marks as that term is used in 15 U.S.C. § 1125(c)(1).

9. The Tommy Hilfiger Trademarks are distinctive when applied to the Tommy Hilfiger Branded Products, signifying to the purchaser that the products come from Tommy Hilfiger and are manufactured to Tommy Hilfiger's quality standards. As such, the goodwill associated with the Tommy Hilfiger Trademarks is of incalculable and inestimable value to Tommy Hilfiger.

10. In recent years, annual sales of products bearing the Tommy Hilfiger Trademarks have totaled in the hundreds of millions of dollars within the United States. Since at least as early as 2004, Tommy Hilfiger has operated a website where it promotes and sells genuine Tommy Hilfiger Branded Products at tommy.com. Sales of Tommy Hilfiger Branded Products via the tommy.com website represent a significant portion of Tommy Hilfiger's business. The tommy.com website features proprietary content, images and designs exclusive to the Tommy Hilfiger brand.

11. Tommy Hilfiger has expended substantial time, money and other resources developing, advertising and otherwise promoting the Tommy Hilfiger Trademarks. As a result of these efforts, members of the consuming public readily identify merchandise bearing or sold under the Tommy Hilfiger Trademarks as being quality Tommy Hilfiger Branded Products.

**The Defendants**

12. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and

continues to sell Counterfeit Tommy Hilfiger Products to consumers within the United States, including the State of Illinois.

13.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using infringing and counterfeit versions of the Tommy Hilfiger Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Tommy Hilfiger to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Tommy Hilfiger will take appropriate steps to amend the Complaint.

## IV.   DEFENDANTS' UNLAWFUL CONDUCT

14.     The success of the Tommy Hilfiger brand has resulted in significant counterfeiting. Consequently, Tommy Hilfiger has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Tommy Hilfiger has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Tommy Hilfiger Products to consumers in this Judicial District and throughout the United States. Despite Tommy Hilfiger's enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. E-commerce sales, including through Internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the

United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

15. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Western Union, Amazon Pay, and/or PayPal. The Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Tommy Hilfiger has not licensed or authorized Defendants to use any of the Tommy Hilfiger Trademarks, and none of the Defendants are authorized retailers of genuine Tommy Hilfiger Branded Products.

16. Many Defendants also deceive unknowing consumers by using the Tommy Hilfiger Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Tommy Hilfiger Branded Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO)

tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Tommy Hilfiger Branded Products. Other Defendants only show the Tommy Hilfiger Trademarks in product images, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Tommy Hilfiger Branded Products.

17. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

18. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Tommy Hilfiger Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Tommy Hilfiger Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet

Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images.

19.    In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit.  Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners.  Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

20.    Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Tommy Hilfiger's enforcement efforts.  On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

14

21.     Defendants, without any authorization or license from Tommy Hilfiger, have knowingly and willfully used and continue to use the Tommy Hilfiger Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Tommy Hilfiger Products into the United States and Illinois over the Internet.  Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Tommy Hilfiger Products into the United States, including Illinois.

22.     Defendants' unauthorized use of the Tommy Hilfiger Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Tommy Hilfiger Products, including the sale of Counterfeit Tommy Hilfiger Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Tommy Hilfiger.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

23.     Tommy Hilfiger hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 22.

24.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Tommy Hilfiger Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The Tommy Hilfiger Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Tommy Hilfiger Branded Products offered, sold or marketed under the Tommy Hilfiger Trademarks.

25.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using

counterfeit reproductions of the Tommy Hilfiger Trademarks without Tommy Hilfiger's permission.

26.    Tommy Hilfiger is the exclusive owner of the Tommy Hilfiger Trademarks. Tommy Hilfiger's United States Registrations for the Tommy Hilfiger Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of Tommy Hilfiger's rights in the Tommy Hilfiger Trademarks, and are willfully infringing and intentionally using counterfeits of the Tommy Hilfiger Trademarks.  Defendants' willful, intentional and unauthorized use of the Tommy Hilfiger Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Tommy Hilfiger Products among the general public.

27.    Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

28.    Tommy Hilfiger has no adequate remedy at law, and if Defendants' actions are not enjoined, Tommy Hilfiger will continue to suffer irreparable harm to its reputation and the goodwill in the well-known Tommy Hilfiger Trademarks.

29.    The injuries and damages sustained by Tommy Hilfiger have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Tommy Hilfiger Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

30.    Tommy Hilfiger hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 29.

31.    Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Tommy Hilfiger Products has created and is creating a likelihood of confusion, mistake, and

deception among the general public as to the affiliation, connection, or association with Tommy Hilfiger or the origin, sponsorship, or approval of Defendants' Counterfeit Tommy Hilfiger Products by Tommy Hilfiger.

32.     By using the Tommy Hilfiger Trademarks in connection with the sale of Counterfeit Tommy Hilfiger Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Tommy Hilfiger Products.

33.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Tommy Hilfiger Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

34.     Tommy Hilfiger has no adequate remedy at law and, if Defendants' actions are not enjoined, Tommy Hilfiger will continue to suffer irreparable harm to its reputation and the goodwill of the Tommy Hilfiger brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

35.     Tommy Hilfiger hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 34.

36.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Tommy Hilfiger Products as those of Tommy Hilfiger, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Tommy Hilfiger Branded Products, representing that their Counterfeit Tommy

Hilfiger Products have Tommy Hilfiger's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

37.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

38.     Tommy Hilfiger has no adequate remedy at law, and Defendants' conduct has caused Tommy Hilfiger to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, Tommy Hilfiger will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

### PRAYER FOR RELIEF

WHEREFORE, Tommy Hilfiger prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.  using the Tommy Hilfiger Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Tommy Hilfiger Branded Product or is not authorized by Tommy Hilfiger to be sold in connection with the Tommy Hilfiger Trademarks;

   b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine Tommy Hilfiger Branded Product or any other product produced by Tommy Hilfiger, that is not Tommy Hilfiger's or not produced under the authorization, control, or supervision of Tommy Hilfiger and approved by Tommy Hilfiger for sale under the Tommy Hilfiger Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Tommy Hilfiger Products are those sold under the authorization, control or supervision of Tommy Hilfiger, or are sponsored by, approved by, or otherwise connected with Tommy Hilfiger;

d.  further infringing the Tommy Hilfiger Trademarks and damaging Tommy Hilfiger's goodwill; and

e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Tommy Hilfiger, nor authorized by Tommy Hilfiger to be sold or offered for sale, and which bear any of Tommy Hilfiger's trademarks, including the Tommy Hilfiger Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2)  Entry of an Order that, at Tommy Hilfiger's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Tommy Hilfiger, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Tommy Hilfiger's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap, Inc. ("Namecheap") shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Tommy Hilfiger's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Tommy Hilfiger's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Tommy Hilfiger Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Tommy Hilfiger Trademarks; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Tommy Hilfiger all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Tommy Hilfiger Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Tommy Hilfiger be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Tommy Hilfiger Trademarks;

6)  That Tommy Hilfiger be awarded its reasonable attorneys' fees and costs; and

7)  Award any and all other relief that this Court deems just and proper.

Dated this 21st day of October 2019.        Respectfully submitted,


/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
RiKaleigh C. Johnson
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rjohnson@gbc.law

*Counsel for Plaintiff*
*Tommy Hilfiger Licensing LLC*